IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   13-cv-03065-WYD

VINCENT P. VIALPANDO,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

## ORDER

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for supplemental security income.  For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I.    BACKGROUND

In December 2010, Plaintiff protectively filed an application for supplemental security income claiming he was disabled by breathing impairments, depression, a congenital heart defect, and left knee problems.  (Administrative Record ["AR"] 12, 95-100, 137.)  Following the initial denial of his application, Plaintiff requested a hearing before an Administrative Law Judge ["ALJ"], which was held in June 2012.  (*Id.* 27-39.)  On July 18, 2012, the ALJ issued a decision that Plaintiff was not disabled.  (*Id.* 9-23.)

In the sequential evaluation process, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since December 1, 2010, the application date.  (AR 14.)  At step two, the ALJ found that Plaintiff has severe impairments of  bipolar

disorder, anxiety disorder, post-traumatic stress disorder and degenerative changes of the knees.  (*Id.*)  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.  (*Id.* 15.)  He found, however, that Plaintiff has moderate difficulties in social functioning and with regard to concentration, persistence or pace.  (*Id.* 16.)

The ALJ then addressed Plaintiff's residual functional capacity ["RFC"].  He found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) except that he "cannot squat or kneel; cannot climb ladders or scaffolds; cannot perform complex tasks, such that he should be limited to jobs with an svp of 2 or less; and can only occasionally deal with the general public."  (AR 17.)  He further found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the RFC assessment.  (*Id.*)

At step four, the ALJ found that Plaintiff has no past relevant work.  (AR 22.)  At step five, the ALJ relied on vocational expert testimony in finding that Plaintiff could perform other work existing in significant numbers.  (*Id.* 22-23).  This included work in representative occupations such as assembler of small products, mail sorter, and housekeeper.  Accordingly, the ALJ found that Plaintiff was not disabled.  (*Id.* 23.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision (AR 1-3), making the ALJ's decision the Commissioner's final decision.  *See* 20 C.F.R. § 422.210(a).  Plaintiff timely requested judicial review, and this appeal followed.

Plaintiff argues that the ALJ's assessment of his social functioning capacity is contrary to the record, and that he failed to properly account for Plaintiff's deficits in concentration and memory. He also asserts that the ALJ improperly gave more weight to the opinion of the nonexamining physician than he gave to the opinion of the examining physician as to Plaintiff's mental impairments. Plaintiff does not dispute the ALJ's treatment of his knee problem or the physical RFC.

II.     The Medical Evidence Regarding Plaintiff's Mental Impairments

Three physicians issued opinions concerning Plaintiff's mental impairments, including his limited ability to interact with others and deficits in concentration and memory. Thus, examining psychologist Dr. Madsen concluded that Plaintiff would have difficulty completing a regular work schedule, difficulty focusing and concentrating on work, and difficulty relating to peers, coworkers, supervisors, and the general public. (AR 231.) The ALJ noted these findings but gave "little weight" to Dr. Madsen's opinion, stating that the opinion was rendered after a single examination and that:

> [t]he opinion is not particularly consistent with those exam finding [sic] or the exam findings of other providers. The opinion is also imprecise. Stating that one has "difficulties" or is "impaired" in an area of functioning gives little insight into the severity or frequency of such difficulties or impairment. One may infer from the GAF score assigned by Dr. Madsen that those limitations are moderate, but the failure to elucidate with detail detracts considerably from the persuasiveness of Dr. Madsen's opinion. Overall, the opinion is not well supported by a persuasive rationale and is not particularly consistent with the record as a whole.

(*Id.* 21.)

Examining psychologist Dr. Rodriguez opined that Plaintiff had marked and extreme impairments in most areas of mental functioning, including understanding and

memory, sustained concentration and persistence. (AR 309-10.)[1] As to social functioning, Dr. Rodriguez opined that Plaintiff would be markedly limited in the ability to interact appropriately with the general public, extremely limited in the ability to accept instructions and respond appropriately to criticism from supervisors, and markedly limited in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id.* 310.) Dr. Rodriguez also stated that Plaintiff had a GAF score of 35-40 (with 45 as the highest GAF the past year). (*Id.* 308).[2]

The ALJ noted Dr. Rodriguez's findings that Plaintiff was incapable of maintaining employment and had marked and extreme limitations in several areas of mental and social functioning. (AR 19, 21.) However, he gave "little weight" to the opinion, stating that it was "not consistent with the claimant's treatment or history or his exam findings". (*Id.* 21.) He also noted that the opinion "was rendered after a single examination" and "is not explained in any significant detail." (*Id.*) He then stated:

> It is not a function-by-function analysis of the claimant's ability to perform work activities, but rather a conclusory statement that the claimant cannot work. This lack of detail significantly detracts from the persuasiveness of the opinion. The undersigned also notes that a statement that one is unable to work - i.e. that he is disabled - is a medical-vocational determination reserved for the Commissioner. . .The opinion does not appear consistent with the exam findings of Dr. Rodriguez, nor those of

---

[1] He also certified on Med-9 forms in 2010 and 2011 that Plaintiff was totally disabled. (AR 261-62.) Plaintiff does not challenge the ALJ's decision to give little weight to these forms, which are admittedly conclusory opinions of disability.

[2] "The GAF is a 100-point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n. 1 (10th Cir. 2012). A GAF between 41–50 indicates serious symptoms or serious impairment in social, occupational, or school functioning. *Id.* A GAF between 31–40 indicates "'[s]ome impairment in reality testing or communication. . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. . . .'" *Id.* (quotation omitted).

>  other examining physicians.  The opinion is also not consistent with the claimant's rather conservative treatment history for his mental health problems.

(*Id.*)

Finally, nonexamining state agency psychologist Dr. Sexton opined that Plaintiff was moderately limited in the ability to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (AR 51.)  She stated that Plaintiff must not have frequent or prolonged contact with supervisors or coworkers, and minimal to no contact with the public.  (*Id.*)

II. ANALYSIS

A. Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for

reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). However, the court "must 'exercise common sense' in reviewing an ALJ's decision and must not 'insist on technical perfection.'" *Jones v. Colvin*, 514 F. App'x 813, 823 (10th Cir. 2013) (quotation omitted).

    B.    <u>Plaintiff's Arguments</u>

        1.    <u>The ALJ's Assessment of Plaintiff's Social Functioning</u>

As noted previously, the ALJ found that Plaintiff had moderate difficulties in social functioning. (AR 16.) As to the RFC on this issue, he gave "moderate weight" to Dr. Sexton's opinion that Plaintiff "was capable of work of limited complexity with minimal interaction with the general public and infrequent contact with supervisors and co-workers." (*Id.* 21-22.) The ALJ explained that "[w]hile it is a plausible interpretation of the record as it existed at the time of Dr. Sexton's review - particularly in regard to the claimant's limitation in concentration, persistence, and pace - subsequent evidence suggests that the claimant is able to perform work with more social contact than envisioned by Dr. Sexton. (*Id.* 22.) Specifically, the ALJ noted that (1) Plaintiff was easily able to establish a rapport with Dr. Rodriguez during the exam, (2) Plaintiff "admitted during this exam that he went fishing a few times a month, which is significantly more social interaction than was evident at the time of Dr. Sexton's review," and (3) Plaintiff "admitted walking 2 miles to the exam, which impacts his credibility, and he was found at least partially credible by Dr. Sexton." (*Id.*)

Ultimately, the ALJ assessed a mental RFC that was not consistent with any of the medical opinions. Instead, he found that Plaintiff cannot perform complex tasks,

such that he should be limited to jobs with an svp of 2 or less; and can only occasionally deal with the general public. (AR 17.) I agree with Plaintiff that the ALJ erred as the RFC did not properly take into account Plaintiff's impairments in social functioning.

I first address the ALJ's decision not to include any restrictions related to supervisors or coworkers. I note on that issue that the psychologists' opinions as to Plaintiff's mental capacity are "specific medical findings" which cannot be rejected by the ALJ in the absence of conflicting evidence. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). In *Washington*, the ALJ relied on evidence of the plaintiff's attempts to work at barber shops which he apparently found conflicted with evidence of medical providers' opinions that Plaintiff could not work without deteriorating under stress. *Id.* at 1441. The Tenth Circuit found that the ALJ's conclusion was not supported by substantial evidence, as the records did not reveal what the plaintiff did at the barber shops. *Id.*

Similarly, in this case, while the ALJ stated he gave "moderate weight" to the social functioning impairments opined to by Dr. Sexton, he rejected her opinion regarding Plaintiff's ability to interact with supervisors and coworkers on bases that were not necessarily inconsistent with her decision, *i.e,* that Plaintiff fished twice a month and had established a rapport with Dr. Rodriguez and other medical providers. (AR 19, 22.)[3] However, there is nothing to indicate that Dr. Sexton would have opined differently if

---

[3] The ALJ noted "[s]ocially, the claimant appears to have little difficulty interacting with his providers and examining physicians, all of whom note that he is cooperative". (*Id.* 19.) He found that this "suggests that he retains the ability to interact in an appropriate manner with those with whom he is familiar and has established a rapport." (*Id.* 20.)

she had been advised that Plaintiff had established a rapport with that of Dr. Rodriguez or his other medical providers.  This is mere conjecture.  Moreover, I agree with Plaintiff that the ability to communicate appropriately for an hour or so at an occasional doctor's appointment does not indicate that the person can maintain that level of socialization for long enough to maintain a full-time job, especially given the fact that medical providers in the field of psychology would presumably have experience in how to establish a rapport with a patient.  Again, the ALJ is engaging in unsupported conjecture.

As to the fact that Plaintiff went fishing once or twice a month, again I find that this does not necessarily conflict with Dr. Sexton's opinion.  There is no evidence or support for the fact that Plaintiff's occasional fishing outings with a nephew (AR 34) are an accurate gauge of how frequently or appropriately Plaintiff could interact with supervisors, coworkers or the public at a full time job.  Minimal daily activities are not substantial evidence that a claimant can work.  *Thompson*, 987 F.2d at 1490.  The ALJ's opinion that Plaintiff's occasional fishing shows that he can interact appropriately with supervisors and coworkers is mere conjecture and is not a reasonable inference.

Moreover, if the ALJ is implying that he rejected Dr. Sexton's opinion as to social functioning because it was based, at least in part, on Plaintiff's subjective statements who he found not to be entirely credible, this is improper because it "impermissibly put the ALJ in the position of judging a medical professional on the assessment of medical data." *Thomas v. Barnhart*, 147 F. App'x 755, 759-60 (10th Cir. 2005).  Indeed, "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements."  *Id*. at 759.  Moreover, Dr. Sexton's opinion was ultimately

based on her analysis of Dr. Madsen's report. (AR 43, 48.) That report was based not only on Plaintiff's subjective statements, but on Dr. Madsen's examination and testing. *Thomas*, 147 F. App'x at 759 (a psychological opinion "'may rest either on observed signs and symptoms or on psychological tests'") (quoting *Robinson*, 366 F.3d at 1083). Thus, it was error to reject the medical opinions as being based merely on Plaintiff's subjective complaints. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004).

The ALJ also stated as support for his RFC opinion that "there is little evidence to support limitations in interacting with co-workers or supervisors." (AR 20.) It is unclear what he is referring to, as every medical provider who rendered an impairment assessed such limitations based upon their examination and testing. This finding does not appear to be supported by substantial evidence. The ALJ went on to say, however, that because Plaintiff "has displayed a somewhat labile mood, as evidenced by his mood and affect and his ER visits for homicidal and suicidal ideation", this would reasonably cause him to be limited in his ability to perform work with the public to only an occasional basis." (*Id.*) This finding again is unsupported and nonsensical. It is impossible to determine how the ALJ concluded that a person who has mood changes with demonstrated homicidal and suicidal ideation would be able to deal with the public occasionally, but would have no limitations in connection with supervisors or coworkers.

Indeed, homicidal ideation raises the issue of whether such a person should be exposed to either the public or to coworkers and supervisors. It also certainly seems to suggest that Plaintiff may not be able to work full time at even a low stress job. As SSR 85-15 recognizes:

> The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day.

1985 WL 56857, at *6.

I also find that the ALJ improperly substituted his judgment for that of Dr. Rodriguez as to Plaintiff's social impairments. As Plaintiff points out, the mental status exam findings which the ALJ assessed are the findings from Dr. Rodriguez's mental status exam. *(Compare* AR 304 to AR 19.) The ALJ rejected the opinion of specific mental limitations that Dr. Rodriguez drew from the mental status exam he administered, and instead drew different inferences from the same medical data. The ALJ does not, however, have sufficient medical expertise to draw such inferences from mental status exam findings. *See Lax v. Astrue*, 489 F.3d 1080, 1089 (10th Cir. 2007*).* Again, this impermissibly puts the ALJ in the position of judging a medical professional on the assessment of medical data. *Thomas*, 147 F. App'x at 759-60.[4]

Moreover, the ALJ impermissibly picked and chose selected statements from Dr. Rodriguez's report, ignoring findings that provided support for the opinions regarding Plaintiff's social functioning. For example, the ALJ ignored the finding that Plaintiff has "deficits in basic social judgment" (AR 304), "experiences alienation from others, and difficulty bonding in relationships" (*id.* 306), and that he "becomes violent and has struck people when he is startled." (*Id.*). He also ignored mental status exam subtest results

---

[4] The ALJ also could not have relied on Dr. Sexton's report in support of these findings, as she did not consider Dr. Rodriguez's report.

that were part of the exam and provided support for the opinion. This was improper. "The ALJ may not simply pick out portions of a medical report that favor denial of benefits, while ignoring those favorable to disability." *Lee v. Barnhart*, 117 F. App'x 674, 678 n. 2 (10th Cir. 2004) (unpublished). Also, although the ALJ need not discuss all the evidence in the record, he may not ignore significantly probative evidence that does not support his decision. *Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001).

The Commissioner argues, however, that even if the Court finds the ALJ erred in not adopting all of Dr. Sexton's socialization restrictions, Plaintiff has not met his burden of showing harm. She relies on the decision of a single decisionmaker ["SDM"] who found that even with the additional socialization restrictions, Plaintiff could perform a significant number of jobs. This argument must be rejected. As the SDM is not a medical professional, her opinion is entitled to no weight. *Cunningham v. Astrue*, No. 09-2535-SAC, 2010 WL 4737795, at *4 (D. Kan. Nov. 16, 2010); *Klobas v. Astrue*, No. 08-cv-02324-REB, 2010 WL 383141, at *5 (D. Colo. Jan. 29, 2010). Further, as a SDM's opinion does not represent the first hand, direct observations of a lay witness, it does not even constitute evidence from "other non-medical sources" per 20 C.F.R. § 404.1513(d)(4). *Cunningham*, 2010 WL 4737795, at *4. Nor is the SDM a vocational expert who can issue a vocational opinion. *See* POMS DI 24510.050 (C), section V. Thus, the SDM's opinion could not be relied upon as a basis for the ALJ to meet his burden at step five.[5]

---

[5] Moreover, the vocational expert acknowledged in response to a hypothetical question that there were no jobs available if a person who was precluded from dealing with the general public, could have only minimal supervision and occasional dealing with coworkers. (AR 37.)

B.      The ALJ's Assessment of Plaintiff's Deficits in Concentration and Memory

I also agree with Plaintiff that the RFC failed to properly account for his deficits in concentration and memory. As noted earlier, all three medical providers in this case who evaluated Plaintiff's mental impairments found deficits in these areas. Dr. Madsen concluded plaintiff would have difficulty completing a regular work schedule, and difficulty focusing and concentrating on work. (AR 231.) Dr. Rodriguez opined that Plaintiff would have moderate, marked and extreme impairments in all eight specific areas of mental functioning within the broad category of sustained concentration and persistence. (*Id.* 309-310.) Dr. Sexton opined that Plaintiff is moderately limited in the ability to understand, remember and carry out detailed instructions, moderately limited in the ability to maintain attention and concentration for extended periods, moderately limited in the ability to work in coordination with or proximity to others without being distracted by them, and moderately limited in the ability to complete a normal work day or week without interruptions. (*Id.* 50.)

The ALJ did not adopt any of these opinions, noting that "the claimant's treatment history and mental status exam findings do not support his allegations of disabling mental symptoms." (AR 19.) He acknowledged that "[c]ertainly, the mental status exams [sic] findings of impaired delayed recall, difficulty with serial calculations and problems with digit span are indicative of some degree of problems concentrating and remembering", and stated that the findings "strongly suggest that the claimant is unable to perform skilled work that requires remembering and carrying out complex instructions." (*Id.*) However, he stated that "the finding of intact immediate recall, ability

-12-

to follow a 3-step command, and perform simple math problems suggests that [Plaintiff] retains enough concentration and memory to perform the simple tasks associated with unskilled work." (*Id*.) As a result, the RFC assessed by the ALJ limited Plaintiff only to unskilled work and "no complex tasks defined as SVP: 2 or less". (*Id*. 19, 37.)

I find that the ALJ's RFC limiting Plaintiff to unskilled jobs and no complex tasks (or in other words, simple tasks) did not account for Plaintiff's deficits in concentration and memory. This is particularly significant as the ALJ had the burden at step five to prove that Plaintiff retained the capacity to perform a significant number of jobs.

I first note that unskilled work is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §416.968(a). As Plaintiff points out, this definition does not state the level of concentration or memory necessary to perform such work. There is no support in the record that a person with impairments in memory or concentration will be able to perform the entire range of unskilled jobs.

Further, the Social Security Administration has recognized the disparity between mental aptitude, such as concentration and memory, and skill level, stating:

> Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job.

SSR 85-15, 1985 WL 56867, at *6. Thus, a limitation of skill level just accounts for issues of skill transfer, not impairment of mental functions—which "are not skills but, rather, general prerequisites for most work at any skill level." *Chapo v. Astrue,* 682 F.3d

at 1290 n.3 (*quoting Wayland v. Chater*, Nos. 95-7029 and 95-7059, 1996 WL 50459, at *2 (10th Cir. Feb. 7, 1996) (unpublished)).

The Tenth Circuit's analysis in *Wayland* is particularly significant and shows why the ALJ's limitation to unskilled work did not properly account for Plaintiff's impairments in concentration and memory was error. It stated:

> [W]hile there may be circumstances in which a particular mental limitation could be so obviously accommodated by a reduction in skill level that particularized vocational evidence addressing that limitation might be dispensed with, that is clearly not the case here. Indeed, deficiencies in concentration like plaintiff's may well be especially disruptive of production, and perhaps even physically dangerous to the claimant and/or her coworkers, in the kinds of repetitive tasks typically involved in unskilled work. In short, the tacit premise in the ALJ's analysis, i.e., that a cognitive or emotional impairment may be functionally equated with the lack of a skill, as that term is employed in the [Commissioner's] regulations, is wrong.

*Id*.

Thus, the ALJ erred in translating Plaintiff's impairments to a simple reduction to unskilled work. I also find that a restriction to essentially simple tasks does not adequately take into account Plaintiff's memory and concentration impairments. The Tenth Circuit has made clear that such a limitation does not account for moderate or more severe impairments in attending and concentrating. *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014); *Crowder v. Colvin*, 561 F. App'x 740, 745 (10th Cir. 2014). Instead, the ALJ is "required to express those impairments 'in terms of work-related functions' or '[w]ork-related mental activities,' SSR 96–8p, 1996 WL 374184, at *6"; *Jaramillo*, 576 F. App'x at 876. As a result, as in *Jaramillo*, the ALJ's reliance on

-14-

the jobs the vocational expert identified in response to the hypothetical was not

supported by substantial evidence. *Id.*; *see also Chapo*, 682 F.3d at 1290 n.3.

I also agree with Plaintiff that the ALJ improperly substituted his opinion for that

of the medical providers as to Plaintiff's memory and concentration by again drawing his

own conclusions from the raw data generated by the mental status exams. As noted

earlier, the ALJ does not have sufficient medical expertise to draw such inferences.

Moreover, the Tenth Circuit is clear that "'[i]n choosing to reject the treating physician's

assessment, an ALJ may not make speculative inferences from medical reports and

may reject a treating physician's opinion outright only on the basis of contradictory

medical evidence and *not due to his or her own credibility judgments, speculation, or lay

opinion.*'" *Langley*, 373 F.3d at 1121 (emphasis in original) (quoting *McGoffin v.

Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)). Finally, as with Plaintiff's social

functioning, I find that the ALJ improperly picked and chose selected statements from

Dr. Rodriguez's opinion to support his findings regarding Plaintiff's memory and

concentration impairments. Again, this was error. *Carpenter v. Astrue*, 537 F.3d 1264,

1265 (10th Cir. 2008).

> 3. <u>Whether the ALJ Erred in Giving More Weight to the Opinion of the Nonexamining Physician Than He Gave to Dr. Rodriguez's Opinion</u>

Finally, I agree with Plaintiff that the ALJ erred in his weighing of the opinions of

nonexamining psychologist Dr. Sexton and examining psychologist Dr. Rodriguez. I first

note the well established rule that the opinion of an examining physician is generally

entitled to more weigh than that of a nonexamining physician. *Robinson*, 366 F.3d at

1084. Indeed, the Tenth Circuit has gone so far as to say that an examining doctor's opinion "is presumptively entitled to more weight than a doctor's opinion derived from a review of the medical record." *Chapo*, 682 F.3d at 191. The ALJ is required to consider several factors in weighing medical opinions, and must provide specific, legitimate reasons for rejecting them. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003).

In the case at hand, the ALJ reduced the weight he gave to Dr. Sexton's opinion because she did not have the opportunity to consider medical evidence received after her report. This was proper, as that is a valid factor to consider in determining the weight of an agency physician's opinion. However, the ALJ's statement of reasons for reducing the weight of Dr. Sexton's opinion does not validate her opinion in the first instance. The ALJ erred as he never stated why he found her opinion was entitled to weight in the first place, and why he chose to give it greater weight than that of the examining medical providers. This is reversible error. *See Quintero v. Colvin*, 567 F. App'x 616, 617 (10th Cir. 2014) (reversing and remand when "the ALJ failed to provide adequate and acceptable reasons for the weight he assigned to the medical opinions"); *Robinson*, 366 F.3d at 1084 (if an ALJ intends to rely on a nonexamining source's opinion, he must explain the weight he is giving it"). As the Tenth Circuit has noted, "'[i]n the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion ..., and whether he applied the correct legal standards to arrive at that conclusion.'" *Vergara v. Colvin*, 535 F. App'x 687, 691 (10th Cir. 2013) (quoting *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir.1996)).

I also reject the Commissioner's argument that the ALJ did not have to account for Dr. Sexton's moderate limitations (AR 49-51) because this was not a residual functional capacity assessment, relying on POMS § DI 24510.060.  That POMS section concerns the interpretation of the Commissioner's Form SSA-4734-F4-SUP, which was not used in this case.  Instead, Dr. Sexton's impairments are stated in the "Residual Functional Capacity" section (*see* AR 48) of the Commissioner's form entitled "Disability Determination Explanation".  (*Id.* 41.)  Dr. Sexton's specific list of moderate impairments appears under the subheading "Mental Residual Functional Capacity Assessment."  (*Id.* 49.)  In light of this, the argument that this does not reflect the RFC intended by Dr. Sexton is unsupported.  Moreover, the finding of a moderate impairment "'supports the conclusion that the individual's capacity to perform the activity is impaired,' POMS DI 24510.063 B.2. (boldface omitted), and therefore must be related with sufficient precision in a dispositive hypothetical to a VE and in an RFC finding."  *Jaramillo*, 576 F. App'x at 876.

I also find that the ALJ's reasons for giving "little weight" to the opinion of examining physician Dr. Rodriguez in his report are not supported by substantial evidence.  The ALJ's first stated reason for assigning little weight to the opinion was that it "was not consistent with the claimant's treatment or history or his exam findings."  (AR 21.)  As to the mental status exam findings, the ALJ failed to explain and I fail to see how these can be characterized as unsupportive of his limitations.  Dr. Rodriguez's mental status exam findings document deficits in recent auditory memory capacity, attention and calculation abilities, long term memory for over-learned environmental

information, and basic social judgment, as well as the presence of constructional dyspraxia, the fact that Plaintiff takes a concrete approach to his environment, and the presence of neurocognitive impairment. (*Id.* 304.)  These findings certainly appear sufficient to support serious mental impairments.

To the extent the ALJ found that Dr. Rodriguez's opinion was not consistent with Plaintiff's conservative treatment or history, again I find error.  As Plaintiff acknowledges, it is true that his mental health treatment consists of medication prescriptions from his primary care provider.  The ALJ noted this.  (AR 19.)  However, that does not mean that Dr. Rodriguez's opinion is wrong.  Dr. Rodriguez knew that Plaintiff's mental health condition was being treated with medications (s*ee id.* 303), but found after testing that Plaintiff was impaired in many areas of functioning.  Moreover, Plaintiff was hospitalized for treatment of psychiatric symptoms.  (*Id.* 207-08.)  The fact that Plaintiff did not receive additional mental health treatment does not and cannot change these test results which are specific medical findings.  The two are not necessarily linked.  Moreover, other Circuits have noted that "'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.1989)).

The ALJ next noted that Dr. Rodriguez' opinion "is not explained in any significant detail."  (AR 21.)  This is not supported by the record.  Dr. Rodriguez's assessment is attached to a multi-page narrative report documenting relevant exam findings, and personal observations.  (*See id.* 303-308.)  In contrast, the report of Dr. Sexton that the

ALJ gave greater weight to is much less poorly explained.  The Tenth Circuit has made clear that an ALJ cannot summarily reject reports based on inadequate findings when they are comparable to those reports the ALJ found sufficiently detailed.  *Teter v. Heckler*, 775 F.2d 1104, 1106 (10th Cir. 1985).  Here, in contrast to the situation in *Teter*, Dr. Sexton's report is not even remotely comparable in terms of findings.  Thus, the ALJ had no grounds to reject Dr. Rodriguez' report on this basis.

To the extent the ALJ improperly discounted Dr. Rodriguez's report for being "rendered after a single examination", this is not a proper basis to discount the decision. *See Chapo*, 682 F.3d at 1291.  Further, this makes no sense given that the ALJ gave weight to an opinion of a doctor who had *never* seen the Plaintiff.

The ALJ also stated that he gave little weight to Dr. Rodriguez' opinion because it was not a function-by-function analysis, but rather a conclusory statement of disability.  Again, this is simply not supported by the record.  Dr. Rodriguez's report addresses impairment in twenty standard areas of mental functioning.  (*See* AR 309-10.)  This type of opinion is not an issue reserved to the Commissioner.  *See Krauser v. Astrue*, 638 F.3d 1324, 1332 (10th Cir. 23011).  Moreover, many of these areas of specific functioning were addressed by Dr. Sexton, whose report the ALJ relied on.  (*See id.* 50-51.)  The fact that Dr. Rodriguez may also have given opinions as to disability does not allow the ALJ to ignore the specific findings made by the doctor as to the severity of Plaintiff's mental impairments.

Finally, the ALJ stated that Dr. Rodriguez's opinion does not appear consistent with the findings of other examining physicians.  The only other examining provider was

Dr. Madsen, who found many of the same impairments found by Dr. Rodriguez. While Dr. Madsen did not opine as to the severity of these problems, it appears from the GAF score of 60 he assigned that he believed Plaintiff to have at least moderate difficulty in the areas he discussed. Again, this provides support for Dr. Rodriguez's opinion, as both providers found that Plaintiff had at least moderate difficulties in various areas of mental functioning.

## III.   CONCLUSION

Based upon the foregoing, I find that this case must be remanded for further factfinding as the ALJ erred as to the mental RFC in not properly taking into account Plaintiff's impairments in social functioning and concentration and memory. I also find that the ALJ erred in connection with the weighing of the opinions of nonexamining psychologist Dr. Sexton and examining psychologist Dr. Rodriguez, and that his reasons for giving little weight to the opinion of Dr. Rodriguez are not supported. These errors impact the mental RFC as a whole and the finding at step five that Plaintiff is not disabled because he can perform a significant number of jobs. Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

Dated:  March 26, 2015.

BY THE COURT:

/s/ Wiley Y. Daniel
WILEY Y. DANIEL,
SENIOR UNITED STATES DISTRICT JUDGE